KINGS-COUNTY—HON. JESSE C. SMITH, SURROGATE—December, 1859.

## DAVIS *v.* BROWN.

*In the Matter of the application for Letters of Administration on the goods, &c., of A. B., deceased.*

Cohabitation and reputation are circumstances from which a marriage in fact may be inferred ; but these circumstances do not of themselves constitute a marriage.  They are evidence merely of a marriage contract, which may be rebutted by other testimony.

Thus, where A. B., the deceased, and C. D. had cohabited together as man and wife, at a place of public resort, during two summers, and had taken a house in town under an assumed name, but they were not publicly recognized or known as man and wife among the family relatives and friends,—*Held,* that the presumption of marriage was rebutted by the confession of C. D., that she was not married to the deceased. Letters could not, therefore, be granted to her on the ground that she was the widow of the deceased, though on her application for letters she had sworn positively that she was such widow. .

The facts are fully stated in the opinion.

THE SURROGATE.—An application for letters of administration on the estate of the deceased was made in the usual form, the applicant having stated under oath that she was the widow of the deceased; that the deceased died intestate, without children, and that his next of kin are his mother, and several brothers and sisters, residing in the city of Brooklyn.

The applicant being unable to state the amount of property of which the deceased died possessed, subpœnaed the next of kin of the deceased before the surrogate, to give evidence of the amount of such property.

Upon the appearance of the parties before the surrogate, a brother of the deceased objected to the granting of letters of administration to the applicant, on the ground that she was not the widow of the deceased; and a sister of the deceased made oath that she was informed by her brother, on his death-bed, and believed it to be true, that the applicant was not his wife.

To prove the marriage of the applicant with the deceased, five witnesses were called, three of whom testified that the deceased and the applicant took a house in the city of Brooklyn under an assumed name of Mr. and Mrs. P., and that they resided together in that house as man and wife from May 1st, 1851, to May 1st, 1852. And the other two witnesses testified, that the deceased and the applicant, during the summers of 1850 and 1851 boarded at a private boarding-house at Lake Mahopac, in which several families boarded, and the parties were there known as Mr. and Mrs. A. B.,

and there cohabited together and held themselves out as man and wife, and they were recognized as such by the boarders and inmates of the family.

In opposition to this, the Rev. Mr. O., an Episcopal clergyman (then of the city of Brooklyn), testified that the applicant called on him during the last illness of the deceased, and requested him to carry a message from her to the deceased, who was then at the house of his mother, in Brooklyn. Upon being asked, by Mr. O., why she did not go herself, she replied, that the family objected to her going there. And this witness further stated, that in the course of the conversation he then had with the applicant, she stated that she was not married to the deceased, but probably would have been before that time had it not been for his ill health; and on his cross-examination, he stated that he asked the applicant what relation she sustained to Mr. A. B., the deceased, and whether she was engaged to be married to him, and she said they had been engaged to be married; whether she said they were at that time or not, he did not recollect, but that they would have been married ere that time if he had not been in ill health. She did not say that they cohabited together as man and wife; but she said that the deceased had passed her off as his wife somewhere in the country.

A brother of the deceased was called as a witness, and testified that in the summer of 1851 he was at Lake Mahopac, and saw his brother, A. B. deceased, there, but did not know that he had any one staying with him; that his deceased brother never spoke to him of this woman, and he never heard that his brother was married, nor that he supported any person as his wife, until a short time previous to his death.

Upon this testimony, the question is submitted whether the applicant, who calls herself the widow of the deceased, is entitled to letters of administration.

There is no evidence in this case that any marriage ceremony took place between the parties, nor has any contract of present or future marriage been proved. But a marriage in

fact is sought to be inferred from cohabitation and reputation as husband and wife.

The case of *Starr* v. *Peck* (1 *Hill*, 270) has been cited, and urged as sustaining the position claimed by the counsel for the applicant, that there is sufficient evidence in this case, aided by the presumption that the parties would not indulge in a connection which was immoral, to establish the contract of marriage between the deceased and the applicant.

I have carefully examined that case, and the other cases cited by the counsel for the applicant, together with the case of *Clayton* v. *Wardell* (4 *N. Y.* [4 *Comst.*], 230), decided by the Court of Appeals in 1850. The rules of law established by these cases, as I understand them, are, that marriage is a civil contract, and may be consummated without the aid of a clergyman or magistrate; that no particular form of words or ceremony is necessary, but there must be an actual present contract of marriage, or a contract to take effect at a future time, which must be consummated, before the parties can sustain the relation of husband and wife; that the contract may be inferred from the conduct of the parties by cohabitation, and by holding themselves out to the world as man and wife; and that the circumstances of the cohabitation and reputation should be submitted to the court or jury, as testimony from which a marriage in fact may be inferred; but that these circumstances do not of themselves constitute marriage, that they are evidence merely of a marriage contract, and are liable to be rebutted by other testimony. (*Clayton* v. *Wardell, supra.*)

Testing this case by these rules of law, I am of the opinion that the admission of the applicant to the Rev. Mr. O., that she and the deceased were to have been married, or would have been married, had the health of the deceased been good, together with the evidence. that during the year the parties lived together in Brooklyn they did so under an assumed name, rebut the presumption of a contract of marriage arising from cohabitation and reputation. For it will be borne in mind that the testimony in this case upon that subject is limited to

a summer jaunt or two at a place of resort somewhat removed from the residence of the parties and their friends, and to the hiring and enjoyment of a house for a year under an assumed name. If the evidence had been, that these parties had been introduced and recognized among the members of the family of the applicant, or of the deceased, as husband and wife, the admission made to the Rev. Mr. O. might be construed into a mere declaration that they were not married only because no marriage ceremony had been performed. But, under the circumstances of this case, I do not think a court would be warranted in putting any such construction upon that admission, nor in allowing the presumption in favor of the innocence of the connection of these parties to overcome the positive declaration of the applicant that no marriage had in fact taken place.

I must therefore decide against the application, and an order must be entered denying the right of the applicant to take out letters of administration on the goods, chattels, and credits of A. B., deceased.